Fork District Appellate Court of the State of Illinois is now convened. The Honorable Robert J. Stegman presiding. Good morning, counsel. This is our case number 419-0087, people of the State of Illinois v. Cole Huber and for Counsel for the appellant, would you state your name, please? Yes, Roxanna Mason for the appellant, Your Honor. Thank you, Ms. Mason. And for the appellee? Luke McNeil. Okay, then, Ms. Mason, on behalf of the appellant, you may proceed. May it please the court. The knocker on the front door is treated as an invitation or license to attempt an entry, justifying ingress to the home by solicitors, hawkers, and peddlers of all kinds. This implicit license typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then, absent invitation to linger longer, leave. Complying with the terms of the traditional invitation does not require fine-grained legal knowledge. It is generally managed without incident by the nation's Girl Scouts and trick-or-treaters. These are the words of the United States Supreme Court in Florida versus Jardines, and that is the case that will control this court's decision in the case before it today. Now, we raised four issues in the briefs, and we're not foregoing any of those issues, but the reason I requested oral argument was to discuss the Fourth Amendment issue with the court, and in light of this court's order yesterday afternoon, I believe we may as well jump right in with Carroll versus Carman. Now, when I read Carroll versus Carman yesterday afternoon, the thing that jumped out about it most to me was when the events occurred in that case, 2009, a full four years prior to the Supreme Court's decision in Florida versus Jardines, and I think that's critical to our discussion because in Carroll, the question was whether it was clearly established at the time of that officer's challenged conduct that the conduct was unconstitutional, and it was not because Jardines had not been decided, and that's how Carroll is really quite similar to most of the cases that the state relies on, be it Redmond or the other cases they rely on. Those are all cases about incidents that occurred prior to Jardines versus People versus Coffran, the Fifth Amendment or the Fifth Circuit, Fifth District case that we rely on as Jardines does. Now, the critical, there are two problems with what the officers did here. Let me stop you, man. I'm a little confused. You say, uh, you say that Carroll was decided before Jardines? No, no. Carroll was decided the year after Jardines, but the events in Carroll happened before Jardines. Okay. Yes, and in Carroll, the question was explicitly whether it was clearly established at the time of the officer's challenged conduct, because it's a question of whether when the officer's conducting the action, whether it's clearly settled Fourth Amendment law that his actions are inappropriate. It wasn't because he didn't have the benefit of Jardines. So Jardines isn't even mentioned in the Carroll opinion because it simply wasn't relevant to whether that officer should receive immunity for his conduct. You're suggesting then that those same facts that they occurred after Jardines would have resulted in liability? I do. That is what I am suggesting. There are a few factual distinctions between Carroll and our case. I think the most important one being that the conduct in Carroll occurred at 2.30 in the afternoon versus the conduct in our case that occurred after 10 o'clock at night. So even if Carroll were decided the same way in a post-Jardines world, that doesn't really impact the outcome of our case because the implied license to approach one's home is necessarily different when we're talking about the middle of the afternoon versus the middle of the night. Let me ask you some questions about this because I want to focus as narrowly as I can on the particular fact issues here and get your view on them in the context of a knock and talk. First of all, do you contend that before police officers may engage in a knock and talk that they must have some quantum of reasonable suspicion? Reasonable... Not necessarily, no. I mean police officers can conduct a knock and talk within the normal bounds of the appropriate hours and going to the front door for any reason. So there's no requirement that there must be some good faith or something shown for a police officer to go up to knock at a door? No, police officers are just like trick-or-treaters or salespeople. They can approach the front door at appropriate hours. So you mentioned the time frame and is there some requirement that you think exists or we should impose on the time frame as to when a knock and talk might occur where a police officer can walk up to let's say the front door of a house and knock to ask to speak to someone inside? I believe it's implicit in the majority opinion in Jardines that the conduct that a police officer can engage in is only that that a regular, you know, visitor to the house could engage in normal accepted social norms. And even the dissent in Jardines explicitly noted that it would be inappropriate to, you know, for someone to approach the door in the middle of the night as opposed to during the day. So even the dissent in Jardines would impose such a requirement. Well, Jardines certainly has the language you mentioned about cartilage, but it wasn't a cartilage case. It was a case where the cops brought a dog up to a door to sniff and they used the instrument of the dog to determine what was behind the closed door, wasn't it? It was a dog sniff case, yes. Well, because the circumstances of police and cartilage really wasn't an issue. They were just trying to explain why the cops have some limitations as they walk around, wasn't it? Not exactly. Because it wasn't merely the fact that the police officers used a dog in that case that was the critical factor. The court was also concerned about the property interests of the people who had a property interest in the home and the police officers being in that area under those circumstances. Well, let me ask you this. Everyone talks about the Brandt case that we wrote and in Brandt this court wrote that when reviewing a police officer's actions during a knock-and-talk, our courts are focused on the reasonableness of the officer's actions given the totality of the circumstances presented. Is that still good law? In part, yes. In some parts, it isn't? I think that it could be as a general rule, yes, that is good law. However, it could be interpreted in ways that would not be good law. If it were interpreted in a way to conflict with Jardines, then it would not be good law. Well, again, Jardines wasn't a knock-and-talk case. We're talking about some general principles. One question I have about judging the reasonableness of police conduct is, is it reasonable if the police have a tip that someone for whom they have an arrest warrant is at a particular location to go to that location and knock on the door and ask about it? During normal hours that it would be reasonable for any person to approach the front door? Yes. In the middle of the night? No. Well, it was 10 o'clock. It wasn't 4 in the morning, was it? It wasn't 4 in the morning, but if someone were to come to my door at 10 o'clock at night or be roaming around in my backyard at 10 o'clock at night, it would certainly be abnormal and cause for concern. So if the police are looking for someone with an arrest warrant, does that change the reasonableness of their conduct, whether it's 10 o'clock at night or 4 in the afternoon? No, unless the home in question is the home of the person they have an arrest warrant for. So they have to know that it's that home. If they have a tip that it's at the home of Ferg Smith, they can't go to Ferg Smith's house and knock on the door and ask? During normal daylight hours, they can. At night, when a normal, when it would be inappropriate for... Has any case held that there's some time limit that renders the police knock and talk unlimited, or would we be the first? I contend that Jardine's stands for that principle because Jardine says that when police officers do not have a warrant, a search warrant for the property, and they're just approaching a door, that they may only do so and not be trespassing under the same circumstances that any regular citizen could approach the door and not be trespassing. When the police knocked on the door and got no answer, was it appropriate then to walk around to the back? No, and that's not what happened in this case. Two of the police officers went directly to the back door. Without, or to the backyard, without waiting and seeing if someone answered the front door. Who is the lead officer? I forget his name. The actual lead officer, the one who was... Who went to the front door. Let me grab those notes very quick. I believe it's Bruins. Miller and Haley went to the back door. The other two went to the front door originally, Bruins and I do not believe the other. I don't remember. Was there a sidewalk leading from the front door to the back door or was it just walking through the grass? I don't believe there was a sidewalk because one of the officers testified that the house was facing the street and it was an eastward facing house and he said that he went between the house on the north side and the alleyway, so he didn't say anything about a path or anything. You've been fielding a lot of questions about the knock on the front door, but my understanding of your argument was the problem is it wasn't just the police going to the front door and knocking, is that they went to the back door at dark when the house was not lit up. And that would have been something, as I understand it, as you read Jardinus, out of what the ordinary person would do. In fact, it's kind of dangerous, at least in my neck of the woods. Absolutely, I mean if the primary concern here is officer safety, then the officers comporting themselves within the bounds of the constitution and not going to the back of the house would have been what most ensured their safety in this case in trying to engage the occupants of the home in a consensual encounter. Even if it is okay to knock on somebody's front door at 10 o'clock in the morning, that does not mean it's okay to walk around to somebody's back door, I'm sorry, 10 o'clock in the evening, to somebody's back door at 10 o'clock at night without even first going to the front door and seeing if they answer. The question Justice Turner asked is mine as well. Do we have anything in this record about whether there's a path or walkway or anything from the front door to the back? No, there's no indication of a path or walkway. The one officer who spoke about it simply said that he walked between the house and the alleyway, so you could imply from that in the yard, but there's no indications of a sidewalk. Let's ask for the moment that leave aside that you went to the back, what if it were just the officer at the front, was at the front door, no answer, and went around to the back, would that be permissible? No. Because what? Because he has no license to do so, he has no warrant to do so, and it would not be normal for a, there's no part of the implied license that a person has to approach a home that allows going to the back door. Now, if this were a situation where there were two front doors to the house, there was some confusion over which might be the clearly defined front door and back door, and that would be inappropriate. What about the Third Circuit case that the Supreme Court discussed in Carroll, where the Third Circuit in the Moresto case said that entry into the Courthouse after not receiving an answer at the front door might be reasonable. You're saying that's not true anymore? Not after Jardine's, no. So Jardine says you can never go to the back door? Jardine says that the implicit license that you have is to approach from the front path, not promptly, wait briefly to be received, and then with absent invitation to linger longer, leave. So that was the definitive word, and such as if you're the FedEx package deliverer guy, you're at the front door, you can't walk around to the back for UPS? Absent instructions to do so? No. Now, I mean, you know, with FedEx, obviously, there's all sorts of ways that you can leave explicit instructions for FedEx people to go into your backyard. You can invite them in to that sort of circumstance, but, you know, in a general situation, no, people can't simply roam around in the backyards of property owners, particularly in the middle of the night. Is there any time frame in this record that shows the two who went to the back did that before the fellow at the front knocked on the door and received no response? The officers uniformly testified that they did it at the same time, that the two of them went directly to the back, and then the ones who went to the front went, knocked on the front door, then when there was no answer, they went and joined their companions in the back. Whose house was this that they were, the front door of which they were knocking on? I don't believe that's actually in the record. Does it matter? No. So if it's the Rinder Faust trailer in the back, and Ferd Werfel's house in the front, does it make any difference to our case? No. Well, if it were, does the Rinder Faust have an interest if her trailer happens to be in the backyard of a house that she has no connection to at all? Other than the guy says, yeah, put your trailer there. Well, we know that she has an interest in that general purtilage because of the case law that says that any overnight guest has an interest in the property just as the people who live there do. And she had been staying there with Cole Huber for, at a minimum, three nights. Now, She was staying in the camper, wasn't she? Yes. The record doesn't show she was staying in the house, does it? That doesn't matter. It's still on that property. If it doesn't matter, is it your position then that the curtilage extends to a residence of some third party that she has no connection to other than they're saying you can put your trailer in my backyard? And doesn't the curtilage then begin at the, maybe, at the front of the trailer? If there were some facts in the record that established that the trailer were a wholly separate residence, if, for example, there was a pathway, oftentimes you have two homes on the same land area and there'll be pathways from the public to the front door of both homes, creating that implicit license, being the knocker on the door. Here, where we don't know whether Dorinda Faust had an interest in the actual, ever lived in the actual main house or not, but she was one of the people who lived on that property, and therefore she had property interest in the property. Two quick points, counsel. One, in motion to suppress, it's your burden, defendant's burden, to establish facts which demonstrate that the police conduct was improper, isn't it? Yes. So if this is left unanswered and it's a matter, then you might have missed your, failed to meet your burden. But the second thing is the police have a tip Well, what if it was a tip across the street? I mean, how far does this curtilage to the camper extend? Well, if it was the door across the street and they see the camper and then they walk up to the camper, is it still the curtilage from the house across the street? The camper in the backyard of the home in question, in this case, would not be part of the curtilage of some other home. But you're maintaining that the curtilage was violated of the house by walking into the backyard of the house. Assume this scenario, there was no house at all and the cops walked up to the trailer to knock on that door, would that be permitted? So if there's no house at all at that point, if the trailer were the only thing sitting on that property and then you can see the front door of that trailer from the main thoroughfare, then that would be appropriate. The difference here is you could not see the trailer from the main thoroughfare, so there's no implied license. Well, the point is though, then you're hooking this curtilage argument based upon the house and the record shows no connection between Dorinda Faust and the house. We don't know who's in the house and my point is, how far does this concept of curtilage go? Doesn't she have to have some connection there? Well, I believe we do have at least some connection because I don't remember the house number. I think it's 418. But all of the officers in this case refer to the property as a whole as the property at 418 Chandler. Let's assume that at the hearing of the motion to suppress, the state presented testimony of Ferg Berfel says, yeah, that was my house. I was not there that night. But all I said is to Miss Dorinda Faust, a few weeks ago, it's in August. Yeah, you can put your camper in my backyard. And he says, she never stayed in my house. I don't know anything about her staying in my house. And that's it. Is that enough to establish curtilage in your claim? I saw I got the red light from the bailiff. Is it okay if I answer your Honor's question? Keep going and I'll let you know. All right. I think at that point, he's covered because the homeowner gave Dorinda Faust permission to be a guest on his property. So not a guest in the home anymore. Now it's a guest if you put your trailer on the trailer. On the property, that's enough to establish the curtilage protection of the house. Yes. Any case stand for such a concept? I mean, that's not Jardines either. Jardines, we're talking about the homeowner and the house and the curtilage. There's no question about curtilage protection there, is it? I'm sorry, can you restate that question? Well, in Jardines, there's no question that this was a person who was inside a building and all the rest of it. And they're talking about curtilage as involved where he was literally located. But what I want to know is, how is it that you get curtilage protection for Ms. Faust, Dorinda Faust, when we don't know what connection she's had with this house? It's all derivative. It would be derivative for her and then derivative for your client of a curtilage protection regarding a property that she may have literally no interest in at all. Well, the property is bigger than just the house itself. There's the cases we said in the brief regarding outbuildings being part of the curtilage or even, you know, the garage that's, you know, discussed in the Redmond case that the state relies on heavily. Any sort of outbuilding is a part of the curtilage. So if a property owner invites someone to stay and live at his property, and that person becomes an overnight guest of the property, for Fourth Amendment purposes, the curtilage is treated the same as the home. Okay, let's ask this way. The homeowner of this house owns it. Ms. Faust never stayed there, never had any permission. Turns out there's a property line where there is a a lot in the backyard where some other ownership entry, ownership exists, and the trailer is on that. So Ms. Faust is on her own property in her own camper. It's not the backyard of the house, for all we know. It's just a separate property. Would that be then a search barred by a curtilage violation? At that point, it would depend who it was that was challenging it. I mean, it would still be improper. All the same factual challenges this year, noting that we have no testimony about the homeowner or property lines or anything else. Your whole hook is with the house and the curtilage around the house that somehow then protects your client. I'm wondering, don't we have to have something more with regard to this connection of the property and whose house this is and Ms. Faust's connection to the house? Well, we do have the officers that the trailer was in the backyard of the house. Now that might not be detailed testimony regarding the precise property lines, but it is a statement that was taken to be true by the trial court that the trailer was in fact in the backyard of the house. So and one of them, I guess what you're saying is if a trailer is in the backyard of a house, the protections associated with the curtilage of the house go to the trailer. Yes. No cases ever have held that, has it? I mean, there are numerous cases that have held that the protection goes to the outbuildings and the recreational trailer in this case would be such an outbuilding. Well, but that goes back to my earlier question when you said if the house wasn't in existence, there'd be no problem walking up to the trailer. If the house had been bulldozed, then the only primary home on the property would be the trailer and there would be a frontward facing door presumably. So the implied license to go to the front door of that trailer as the main home would come into play. This is the defendant's motion to suppress. Why should this court or the trial court have to guess as to Ms. Faust's connection to this house and claims of curtilage? The court doesn't because the officers testified that the trailer was in the backyard of the house. That's just a description of location. It has nothing to do with the connections of the property. When I inquire, are we going to hear from the state at some point? Yes. I'm sorry. Good enough and thank you. Thank you. Okay, Mr. McNair. May it please the court. 127 of the record, there's a testimony that there was a driveway that went from the front of the property into the back. So there was no sort of gate or anything like that. There's no testimony of any no trespassing signs that would indicate that the back is any more accessible than the front of this house. The officers had two valid avenues of authority to lead to the arrest of this defendant. First, there was no dispute. It has to be noted. There was no dispute that this was a ruse or anything like that, but the police were there fraudulently to arrest this Brandon Glasscott. Everyone assumed at the motion to suppress hearing that the officers were there and they had a valid tip that Brandon Glasscott was at this residence. I don't know if he was a permanent occupant of the residence, but the tip seems to be, at least wasn't in dispute at the motion to dismiss hearing. That's important because that leads almost to an identical factual circumstance as the Carroll case. I know that that was dealt with qualified immunity, but it should be noted that neither Carroll nor the Jardines case has anything to do with the time of the knock and talk. There's no time limit, no case that has any sort of time limit. That's sort of a new thing that's being brought up today. Counsel, if it's at night and it's dark, I don't want anybody coming up my driveway to my back door or my garage, period. And if they do, they might be dealt with harshly, but of course I would recognize a police officer's uniform, but I don't want anybody driving, walking up my driveway, period. They are not invited to do so. So time does matter because there's apprehension when it's dark, when it's time that people are either in bed or they're gone, the house is dark. Please consider that while I be quiet because I interrupted Justice Turner and he has a question to ask. Yes, Justice Turner. Well, I like the Justice Connick's line of inquiry, but you can come back to that. Did you raise a standing issue in your argument? Standing as to? As to whether a defendant here has standing. Did you raise that? Due to the... Did you challenge the motion? No. But that seems like an obvious... That does seem like an obvious... The standing issues, does that have any interplay with the current questions that Justice Steinman was posing to opposing counsel? Maybe it doesn't, but it seems like they might be intertwined. That wasn't really an issue at the motion to suppress hearing. Defense counsel didn't bring up or argue any kind of differentiating property rights between the trailer and the house. They argued mainly the curtilage issue at the motion to suppress hearing. Well, did you address the Jardine's case? I don't remember seeing that in your brief. Well, the Jardine's case is kind of a red herring, I feel. Okay, explain that. There's no... Jardine's got their... It's a totality of the circumstances, like Brandt states, a totality of the circumstances of reasonableness, Fourth Amendment issues, always. In Jardine's, the requisite reasonable suspicion was raised by the dog sniff at the house. Here, the totality of the circumstances was a valid, presumably reliable tip of a valid arrest warrant at this house. I don't think that the police are obligated to wait until the morning to, if they got this tip at 9 30, to wait until the morning to go serve this arrest warrant. So what am I to think about all this language in Jardine's, even though it is a dog sniff case? The language that says, it seems to me, that if you go to the front of the house on a knock and talk and no one answers the door, that you're not authorized to stay on the curtain ledge and go to the back of the house. Otherwise, it constitutes a search. Because it's a dog sniff case, that language means nothing here. Well, you're... I think that the factor of the arrest warrant comes into play here. Like in Redmond and like in Carroll, both of those situations, they had more than just a shot in the dark circumstance to go into the backyard of the house. They had no probable cause though, did they? They had... Well, Redmond points... Redmond states that to cover the back door, if you're going to arrest someone, is a valid reason for the police to go back there, even without a warrant. Well, if you're going to arrest someone, you have to have probable cause, don't you? You can't... Yes. Well, okay. That's different, isn't it? There's no probable cause in this case. There's a tip that somebody who is wanted on arrest warrant might be in the house, so you knock on the door and two other officers go around. And as we've said before, it's dark outside, it's dark in the house, no one answers the door. But you still think that even under this language from Sardinus or Jardinus, that the officers were authorized to go to the back part of the house, the back door? Yes. And I think Redmond was just a reasonable suspicion. I think they smelled methamphetamine production odors and then went to the... That's not the probable cause to me. I did read the case. I don't remember what it says, but if you smell methamphetamine, I can't imagine why that wouldn't be probable cause if there's crime afoot. But counsel, the whole point about a knock and talk is you don't need anything. That was my very first question of defense counsel. That a police officer can walk up to a residence absent anything. It's not as if they need probable cause or even reasonable suspicion to seek to speak to a resident of the house about any subject. Resident doesn't have to talk to them. But the question is, can the police approach the house? And I don't know why you're talking about smelling things and suspicion and all the rest of it. Well, of course they can approach the house. Maybe it's a... Maybe I'm not seeing the forest for the trees, but the Carroll case states exactly that you can... The driveways, porches, and doors are included in those places that a visitor might go. This was obviously up the driveway. Driveways and porches, places where visitors could be expected to go, walkways. Here, there was testimony that this was a driveway to the back. And I really... Let me ask this question. Mr. Justice Turner raised a good point. I asked counsel questions about the connection to the house and whether or not the hookup cartilage in the house on this record can be established. Is that an argument that you made to this court? Or was it an argument that was made to the trial court that, wait a second, what's the connection to this house? Ms. Faust, there's nothing in here about that she ever stayed there. The only thing apparently in the record is the trailer was in the backyard. That's true. It was not a position that defendant or the state took in the motion to suppress hearing trying to divide the reasonable expectation of privacy between the house and the trailer. They argued that the cartilage argument at the motion to suppress. Did anyone talk about jardines at the hearing on the motion to suppress? Not that I'm aware of. Again, I think jardines is inapplicable because the wrinkle of someone having a valid arrest warrant in this house, you have to factor that into the totality of the circumstances with the officer's knock and talk, especially when Carroll says the same thing, and so does Redmond, that this was not invalid authority. The police had authority to be where they were in this case. What about Justice Kodak's question, which is one that certainly seems to be something that's a real concern, that is given jardines or even before jardines, is it appropriate, is it reasonable police conduct as we evaluate the totality of the circumstances judging the police conduct be reasonable to be walking up to the front door at 11 o'clock at night or 10 o'clock at night for whatever reason? Here, they said they had a tip that someone wanted an award was there, but is that sufficient or what should this court say about that? I think that was reasonable because I think it would be unreasonable to wait until whatever the appropriate hour is, especially since none of the cases talk about any kind of time limit on when knock and talks could happen. My front door has a ring doorbell. That means that if I choose to do so, I can see who is at my front door. I don't have a camera at my rear door or on my driveway or on my garage, or if my wife had a she shed in the backyard or if I had a he shed in the backyard, I don't have any security devices around those, but I do not expect anyone to leave my front porch and my front door to explore the land upon which my house sits, particularly if there are buildings back there or if my friend who drives a camper trailer is pulled all the way up next to my heated garage, which could actually be used to house someone for a police officer to walk up and knock on the camper. That camper is on my property and the inference or the presumption is it's supposed to be there. I don't expect anybody to walk into my backyard, period. Is that an unreasonable expectation? Well, this depends on the totality of the circumstances. I don't know if you have a gate. I don't know how accessible... I don't have any gate. I don't know how accessible your backyard is. Here, it seems like the backyard was rather accessible, especially if someone else is living in the backyard itself. And we have the tip of the occupant having a ballot arrest warrant in this house. But there's no basis to show that that occupant regularly resides there or lives there on a permanent basis or has that address. It's just that they might be there. That was not an issue. That was not a disputed issue. I mean, the defense counsel could have raised that issue at this motion to suppress hearing, but there was no Brandon Glasscock there or anything like that. They didn't do so. But there wasn't. Brandon Glasscock wasn't there, was he? Apparently not or at least no one answered either door. But again, I don't even know if they even got to the position of knocking on the back door in this case. I mean, this is a trailer. It's not like it's hard to see once rounding the corner of the house, presumably. They see this in plain view trailer with the door open and then two unconscious people in plain view through that. It's only in plain view because they go into the backyard. Nobody said it was in plain view from the front door. Correct. But Redmond and Carroll say both of those cases authorize the police to be in the backyard if the totality of the circumstances allow it. And I would say that here... Again, Justice Connick's point is those were daylight cases too. It seems to me that the biggest problem the state has here is twofold. One, you're walking from the front door to the back door, leaving aside for the moment whether people went to the back door directly. But secondly, it's at night. So we have 10 o'clock, an officer goes to the front door, gets no response, goes around to the back. At what point, judging the totality of the circumstances, the reasonableness of the police conduct, should we say, especially considering the at a minimum dicta of Jardines, that that's not appropriate. We don't want it. The police shouldn't be seeking to execute or to find somebody in the house under these circumstances. Well, again, this wasn't a disputed angle at the motion to suppress hearing. There's nothing in the record that defense counsel was arguing time of day or anything like that. They were saying just a flat ban based on the curtilage of the house. Well, what should we say? Whatever they argued, I would say that it would be unreasonable for police who have a valid, reliable tip of an occupant of a house. Counsel, you keep saying that. Let me interrupt for a moment. The whole purpose between a knock and talk is it doesn't matter. That is, it could be just nosy cops. So if you have a nosy cop, it might help explain what they were doing there, but it's not a requirement. So the source of the, if they had a really good tip, I'm not sure if a knock and talk is justification for it. It really matters. Well, the Redmond, you'll agree that this Redmond case, the fourth district case, is a knock and talk case? Yes. Okay. In part, and maybe there's some discussion about it, it seemed to to the extent that went off and what the police later discovered when they were there, that's where it seems to expand. But the fundamentals of knock and talk are what we talked about in the other cases, and that is the cops have the same rights any other citizen does to any other person, walk up and knock on the door. And when we're engaging police conduct, the fact that it's at night, and just as the next point, what about that? Is the FedEx guy going to 10 o'clock show up? And if no one answers the front door, go on to the back? Presumably, no. But again, the FedEx guy... To the extent of the police license, shouldn't we say the police shouldn't be able to do it either? Well, I think you look at it through the totality of the circumstance lens, like always, and here the officers had the the extra circumstance of the arrest warrant of Brandon Glasgow. That by itself, just like in Redmond, or just like in Carroll, that by itself lends support to them covering the back door as well. Well, the argument about we went to the back door because you want to make sure people won't run out or protect cops, whatever that explanation is, isn't that inconsistent with other case law? I mean, where does that appear that you can routinely, as Ms. Mason points out, when you show up at the front door, go around to the back just as well before you get no response? That's what happened here. Isn't that a problem? Well, Redmond says, in Coffran, the Fifth District case, we agree with the Redmond court that the decision to deploy one officer to the front door and a second officer to the rear door in case the occupants attempted to leave from the rear and officers shot or needed protection was a reasonable one. That was Coffran? Yes. Agreeing with Redmond. But Redmond was a different sort of case. Redmond had, at some point in Redmond, the police had reasonable grounds to not believe crime was afoot. But is it your position that on a routine knock and talk, for instance, let's call two o'clock in the afternoon, the police have a tip about a warrant that the cops can walk up to the front door and before even reaching the front door, knocking on it, getting a response, they can walk around to the back of the house as well? Again, it's a circumstantial thing, but here it sounds like it's a question. Is that your position? Yes, if there's a gate or a no trespassing sign or something that that shows inaccessible backyard area. So I want to be clear. It's one thing to say the cops can walk up to the front door at two in the afternoon, knock and get no response, and then maybe walk around to the back door and see if they can find someone there. But that's not what your position is. You're arguing they can do it simultaneously before they get a response at the front door. Is that correct? Yes, that's what Coffran and Redmond state. Again, it's all depends on the circumstances here. Given the dicta, at least, of Jardines, isn't that problematic to say that they can just walk around to the back door at any time for no reason? I don't think it can be. I don't think it's for no reason. I think even knock and talks like Redmond shows are ever-changing in the dynamic situation. Circumstances change throughout. Here, this was an arrest warrant. Like I stated, can I finish? Yes, go ahead and finish your thought. I think Carmen or Carol and Redmond both, the arrest warrant puts this over the top of being a reasonable circumstances for the police to be in the backyard, and at that point everything that happens after that is a consensual encounter or observed in plain view. Okay. Well, thank you, counsel. Ms. Mason, any rebuttal? Can't hear you. Okay. Go ahead. May it please the court. I want to touch just on the last thing that Mr. McNeil was discussing and his position that the arrest warrant somehow changes this analysis, and that that simply isn't the case because an arrest warrant for someone who does not live or isn't an overnight guest in a home does not give the police extra rights to be on that property beyond what a regular person would have. Those are, you know, the cases we cited in the brief, White from the Illinois Supreme Court and then Stiegel from the United States Supreme Court, in order for the police officers to intrude into a home based on an arrest warrant for someone who does not live in the home, they must also get a search warrant. Here, they didn't have a search warrant. We're talking about a warrantless entry into the curtilage of the home in the middle of the night. And I think that the portion of Jardines that's really important here is the part where they're talking about the importance of the home and how the Fourth Amendment protects it, and they say that this right to protect the home would be of little practical value if the state's agents could stand in a home's porch or side garden and trawl for evidence with impunity. The right to retreat would be to observe his repose from just outside the front window. So the United States Supreme Court has a problem with going into the side yard or even hanging out in the front yard and peering in. When there isn't a search warrant for a home, for a residential property, the police have no more right to be there than anyone else. They can go to the front door, knock, wait briefly, and if nobody answers, leave. Counselor, would that be true even if the police absolutely knew that the person whom they were seeking on an arrest warrant was inside the house? Yes. I know that's not the facts, but okay, I'm just curious. Yes, I mean, that's Stegall. They could go to a magistrate and get a search warrant, and then they would absolutely have a right to go into the home and search for that person that is there. But they had probable cause to establish that he was there. But absent that search warrant, they cannot violate the sanctity of the home. I don't want to appear grumpy, but we don't have magistrates in Illinois, and we don't operate the way the federal system does. And I know that language appears, but I think it's better to say go before a judge. But I won't hold that against you. Be it magistrate or judge, the police in this case went to neither, and that's the problem. Had they done so, we might not be here discussing this issue, and we could have talked about the other three. But, you know, whether it's on this issue or whether it's on the other issues raised in the briefs, we ask that this court either vacate Mr. Huber's conviction outright or, in the alternative, grant a new trial. Are there no further questions? Thank you, counsel. Appreciate your arguments and those of Mr. Rick Neal, and we'll take this matter under advisement and be in recess.